# CHARLESTON.

## KNOWLTON *et ux v.* CAMPBELL.

### Decided November 24, 1900.

CONTRACTS—*Parol Evidence—Ambiguity—Reformation.*

> If a written contract is ambiguous on its face, limited oral evidence may be admitted, either at law or in equity, to explain its meaning (that is, evidence to show the situation of the contracting parties, the circumstances surrounding them, and their acts afterwards in executing the contract, in order to reflect their intention in making the contract), but not evidence of their interlocutions, declarations, or conversations before or at the time of the consummation of the contract. If the contract is not ambiguous on its face, it must speak for itself, and no oral evidence can be admitted, either at law or in equity, to contradict, alter, or explain it. But a court of equity may, for a mistake mutual to both parties, reform the contract in a suit brought expressly to correct such mistake, and then oral evidence of any kind is admitted to establish the mistake; but this cannot be done in a court of law, which must take the contract as written. (pp. 296, 297).

Error to Circuit Court, Tyler County.

Action by Thomas and Mary Knowlton against T. J. Campbell. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

F. L. BLACKMARR and P. A. SHANOR, for plaintiff in error.

J. H. STRICKLING, for defendants in error.

BRANNON, JUDGE:

Knowlton and wife brought an action against Campbell before a justice of Tyler County, which went to the circuit court by appeal, and the case was there tried by a jury which returned a verdict against Campbell for three hundred dollars, and judgment having been rendered on the verdict, Campbell comes to this Court by a writ of error.

The nature of the case is this: Knowlton and wife made an oil lease to Campbell of a tract of land containing the following clause: "The party of the second part agrees to complete a well within sixty days from the execution of this lease, or in lieu

thereof thereafter pay to the party of the first party sixty dollars per month until work is commenced. Campbell began the work incident to the boring of an oil well within sixty days from the date of the lease, but did not complete the well for twelve or thirteen months thereafter, being unable to do so for want of water necessary in the work, as he claimed and gave evidence tending to show, being compelled to await the building of a pipe line for the conveyance of water. The plaintiff claimed the monthly rent of sixty dollars for certain months after the commencement of the work, and before its completion, that is tne completion of the well, basing his claim on the theory that though the work was commenced, in good faith, within sixty days from the date of the lease, he was entitled to the monthly rental for the time after the sixty days till the completion of the well. Campbell claims that as he began work within sixty days, he is liable to no rent under the language of the contract above quoted. On the trial the plaintiffs were allowed to ask Knowlton the question, "State what the bargain or agreement was in relation to the paying of rental by Mr. Campbell to you upon the lease." Knowlton answered: "The agreement was that the rental was to be paid to me until the well was completed, while that paper there says until work was commenced, and I supposed that that was the way it was written in the lease, rental to be paid until the well was completed."

The case turns upon the question whether that oral evidence was properly admitted over the defendant's objection. I think that this ruling of the court departs from law often stated and well settled. That evidence made that contract speak to the jury a different language and effect from its plain words. In *Long v. Perine,* 41 W. Va. 314, it is laid down that "a writing being the repository of the final agreement of the parties, and the highest and safest evidence of it, in the absence of fraud or mistake, oral evidence of prior or contemporaneous stipulations or conversations will not be admitted to incorporate them in it so as to add to, alter, or contradict the agreement spoken by the writing." In *Hukill v. Guffey,* 37 W. Va. 425, it is held that "parol evidence will not be received to ingraft upon or incorporate with a valid written contract an agreement made contemporaneously therewith and inconsistent with its terms." Same doctrine, very common doctrine, is found in *Towner v. Lucas,* 13 Grat. 705, and *Crislip v. Cain,* 19 W. Va. 438, pt. 12, syl. There are two

specific reasons promptly suggesting themselves against the competency of this evidence. One is that oral evidence is not admissible even to explain a written contract, unless there is ambiguity upon its face; for if its face speaks a definite language, that is, explains itself, uses plain language, tells what it means, then it speaks for itself, and no oral evidence can be admitted to explain it, tell its meaning or make it speak contrariant language. *Long* v. *Perine,* 41 W. Va. 314; *Crislip* v. *Cain,* 19 W. Va. 438, .pt. 13 syl. There is no ambiguity upon the face of this instrument, so as to let in any oral evidence explanatory of it. You may by oral evidence explain a misty, ambiguous contract, but you cannot thus contradict, alter or modify one plain on its face, whose words speak plain language and meaning, and thus make the contract do what its words say it did not intend to do. The case of *Howell* v. *Behler,* 41 W. Va. 610, as also the cases above cited, plainly establish this healthful doctrine; but that rule was violated in this case.

The second reason why that evidence was improper is this: It made the contract do what its language does not do; it made Campbell pay rental after sixty days up to the completion of a well, even while working, whereas he agreed to pay rental only in case he failed to complete a well within sixty days, and then only from the close of that sixty days until the commencement of the work. So the contract as it reads does not give Knowlton the rental he claims. It does not provide for the case of commencement and failure to finish in sixty days. If it was intended that it should do so, there is a mistake in that contract. Suppose there is and that the contract does not say what it was intended it should say. Then it can be corrected only in equity, and cannot be affected upon a trial in an action at law. "Courts of law act on the contracts. of parties as they find them, and have no power to rectify a mistake not apparent upon the face of the instrument. Such relief is purely within the province of equity courts." 14 Ency. Pl. & Prac. 35. "A court of equity may reform a written contract where a suit is brought for the purpose, and it is alleged that by fraud, accident or mistake of the scribe, or by some other means the real agreement of the parties was not that which is expressed in such written agreement; but except when such a suit as this is brought, no parol evidence can be introduced to explain, alter or modify in any manner a written agreement." No verbal declarations or un-

derstanding of the parties at the time of the contract can be admitted. *Crislip* v. *Cain,* 19 W. Va. 438, pts. 12 and 13 syl.; *Hurst* v. *Hurst,* 7 *Id.* 289; *Titchenell* v. *Jackson,* 26 *Id.* 460; *Lockwood* v. *Holliday,* 16 *Id.* 651; *Allen* v. *Yeager,* 17 W. Va. 128. So, it was error to admit that oral evidence.

Even to reform a contract in equity the mistake must be mutual, common to both parties, and that mistake must be made out by clear and convincing proof beyond reasonable controversy. *Robinson* v. *Braiden,* 44 W. Va. 183. Both parties must have agreed upon a common thing and the instrument fail to carry .it out; then equity will step in and correct, but will not make a contract for the parties by inserting a clause which both parties did not intend should be inserted. This contract was read to Knowlton twice and he could read and write himself. Did he mistake the legal construction of it? It used the plain word "commence," not the word "complete." Where means of information are open to both parties, and where each is presumed to exercise his own skill, diligence and judgment, equity does not relieve for mistake. 1 Story, Eq. sec. 149. Still, if it were clearly established that both parties agreed that such rental should run after the sixty days until completion of a well, and that it was intended by both parties that it should be so stated in the contract, equity would relieve by performing the instrument so as to make it speak such intention. But a court of law cannot do so, but must take the instrument according to its letter. Judgment reversed, verdict set aside and .a new trial granted.

*Reversed.*